**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| THE NEELY GROUP, INC. | Case No. 24-03859 |
| Debtor. | Hon. A. Benjamin Goldgar |
| BLACK CARBON COALITION, INC., | |
| Plaintiffs. | |
| v. | |
| THE NEELY GROUP, INC. | |
| Defendant. | |

**COMPLAINT TO DETERMINE THE NONDISCHARGEABILITY OF DEBT**

BLACK CARBON COALITION, INC. ("Black Carbon") hereinafter "Plaintiff," by and through its attorneys Windy City Trial Group, Inc., and for their Complaint to the Determine Nondischargeability of Debt of The Neely Group, Inc. ("The Neely Group"), states as follows:

**SUMMARY OF THE COMPLAINT**

In the spring of 2022, Donald Owens ("Owens"), the President, CEO and majority shareholder of Plaintiff Black Carbon and HNO International, Inc. ("HNO") was introduced to Morrell "Steve" Neely, who upon information and belief, is the sole officer and owner of the Debtor, The Neely Group. On March 07, 2022, a written contract ("the Contract") was executed between Black Carbon and The Neely Group to arrange certain political introductions on behalf of Black Carbon, and for the additional benefit of HNO ("the Contract"). Owens terminated the contract in September 2022 for cause. On December 20, 2022, The Neely Group filed its original

1

Complaint against Black Carbon, HNO and Owens pursuant to the Contract in U.S. District Court for the Northern District of Illinois. On April 08, 2024, presiding Judge Thomas M. Durkin stayed the aforementioned proceedings pursuant to the instant Chapter 11 petition filed by The Neely Group in this Court.

It was not until the filing of the subject Petition in this matter that Plaintiffs learned for the first time, that contrary to its prior representations, The Neely Group is not in the business providing introductions to Washington, DC-based politicians for which Plaintiffs sought its services. Rather, The Neely Group runs (apparently poorly) at least two UPS franchises in Chicago. Upon this new information, Plaintiffs now verily believe it was fraudulently induced to enter a contract with The Neely Group for which The Neely Group had no expertise or experience.

Moreover, the timing of the monies Black Carbon caused to be contractually paid and the additional monies demanded by The Neely Group, lead Plaintiffs to reasonably infer that their monies were instead used to fraudulently prop up the two UPS franchises for which The Neely Group now seeks this Court's bankruptcy protection. Accordingly, the Plaintiff's claim for monies filed in the prior pending lawsuit against The Neely Group is not subject to, and should not be, discharged in bankruptcy.

**JURISDICTION AND VENUE**

1. Plaintiffs initiate this adversary proceeding pursuant to 11 U.S.C. §523(a)(2)(A), 11 U.S.C. §523(a)(6) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

2. The Neely Group is the Debtor in Chapter 11, Case No. 24-03859 in this Court and Black Carbon is one of its creditors. *See,* Dkt. 38 at 1 and 2, respectively.

3. This Court has jurisdiction as to the claims for relief sought herein pursuant to 28 U.S.C. §§157 and 1334.

4.     Venue in this Court is proper pursuant to 28 U.S.C. §1409.

5.     If the Court should find that this is not a core proceeding, Plaintiff consents to entry of a final judgment by the Court pursuant to Fed. R. Bankr. P. 7008.

6.     This Adversary Proceeding is brought in connection with the Bankruptcy case now pending in this Court.

## PARTIES

7.     Plaintiff Black Carbon is a Delaware Public Benefit Corporation having its principal place of business at 42309 Winchester Road, Temecula, CA 92590.

8.     Third party beneficiary HNO is a Nevada C-corporation, having its principal place of business at 41558 Eastman Drive, Murrieta CA. It is a citizen of Nevada and California.

9.     Defendant The Neely Group is an Illinois corporation doing business as The UPS Store #3173 and The UPS Store #5744, with its principal place of business located at 1020 West Oakdale Ave, Chicago, IL 60657. The Neely Group is a citizen of Illinois.

## PROCEDURAL POSTURE

10.    On December 30, 2022, The Neely Group filed Case No. 23-cv-07347 against Black Carbon, HNO and Owens in U.S. District Court for the Northern District of Illinois. On June 12, 2023, The Neely Group filed its latest pleading, a Second Amended Complaint against Black Carbon, HNO and their principal Donald Owens, copy of which is attached hereto as **Exhibit A**.

11.    On July 06, 2023, Plaintiff, HNO and Owens filed an Answer to Second Amended Complaint, and Plaintiff contemporaneously filed a Counterclaim against The Neely Group, a copy of which is attached hereto as **Exhibit B**.

12.    On November 14, 2023, The Neely Group answered the Counterclaim against it, a copy of which is attached hereto as **Exhibit C**.

3

13. The aforementioned litigation was stayed on April 08, 2024 as a matter of law following the filing of the instant Chapter 11 petition. A status hearing before Judge Durkin is currently set for July 9, 2024 at 9:00 a.m.

## **DEVELOPMENT OF THE PARTIES' RELATIONSHIP**

14. In the Spring of 2022, Owens, at all times relevant the President and CEO of Black Carbon and HNO was introduced to The Neely Group's Morrell "Steve" Neely ("Steve Neely"). *See Affidavit of Don Owens,* attached hereto as **Exhibit D**.

15. Upon information and belief, and at all times relevant, Steve Neely was the sole owner and officer of The Neely Group.

16. On several occasions, Steve Neely represented to Owens that The Neely Group had influential political contacts that The Neely Group could introduce to Defendants such that Defendants could pursue certain environmental legislation that would help advance the goal of Defendants to combat climate change. By way of example, The Neely Group claimed to be able introduce Owens to then U.S. House Speaker Nancy Pelosi, Illinois Senior U.S. Senator Dick Durbin, and former President Barack Obama. *See,* Exhibit D at ¶5.

17. In reliance on Steve Neely's representations, on March 07, 2022, Black Carbon and The Neely Group entered into a written contract wherein The Neely Group would perform, or cause to be performed, certain political introduction efforts on behalf of Black Carbon and to the benefit of HNO. *See*, Doc. 14-2 to Exhibit A herein.

18. As initial consideration for said contract, Defendants caused The Neely Group to be paid $1 million in cash on March 09, 2023. *Id.* at Doc. 14-12, p.1. Defendants further agreed to pay $4 million in unrestricted HNO stock which never came to pass due to an alleged material breach by The Neely Group. Specifically, its failure to perform, including but not limited to

4

providing monthly expense reports as to the costs of specific activities undertaken on Plaintiff's behalf by The Neely Group.

19. In addition to the initial $1 million in cash paid to The Neely Group, Steve Neely demanded two other cash payments to The Neely Group for certain alleged expenses related to his introduction efforts on behalf of Black Carbon. Specifically, $225,000 on June 01, 2022 and $200,000 on July 22, 2022. *See*, Doc. 14-12, pp. 2 and 3 of Exhibit A herein.

20. On September 20, 2022, Donald Owens, as President and CEO of Black Carbon terminated the subject contract for cause pursuant to Sections V and VII of the contract. *See,* Doc. 14-10 of Exhibit A herein.

## **SUSPICIOUS BEHAVIOR BY THE NEELY GROUP IS EXPOSED**

21. Until the filing of the instant petition, Plaintiffs were unaware why The Neely Group either did no work or subcontracted its work to third parties without paying for it.

22. Absent the contractually required monthly expense reports, Defendants were unable to track the use of the aforementioned funds paid to The Neely Group.

23. Instead, on May 10, 2022, The Neely Group tendered a purported "paid in full" invoice in the amount of $834,960 from Interdependence Public Relations ("Interdependence") for the subcontracting of work which Defendants reasonably expected The Neely Group would perform. *See*, Doc. 15, ¶29 to Exhibit B herein.

24. On November 16, 2022 Defendants learned from Interdependence Chairman Eric Schiffer that the "paid in full" invoice was fraudulent, and that Interdependence had not been paid any monies from The Neely Group for work performed by Interdependence for the purported benefit of HNO International. *See,* Doc. 15, ¶31, and Doc. 15-4 to Exhibit B herein. A copy of the

5

e-mail exchange between undersigned counsel and Schiffer and counsel is attached hereto as **Exhibit E**.

25. On November 04, 2022, both HNO and The Neely Group were sued for nonpayment of the aforementioned $834,950 by the assignee of Interdependence in California. *Global Asset Recovery Management, LLC, v. The Neely Group, et al.*, Case No. 30—2-22-1289933—CU—CB—CJC ("the California Action"), a copy of which is attached as **Exhibit F**.

26. While HNO continues to defend itself in the California Action, The Neely Group has failed to appear, and upon examination of this Court's docket, has also failed to disclose this lawsuit or the debt alleged and assigned by Interdependence against The Neely Group.

27. Moreover, on July 11, 2022, and the undisclosed to Plaintiffs, The Neely Group, through its principal Steve Neely, obligated HNO to a $20,000 per month contract for lobbying services from Ricchetti, Inc., which was purportedly renewable month-to-month.[1] *See*, Doc. 15, ¶30 and Doc. 15-4 to Exhibit B herein. Again, for services The Neely Group was expected to perform directly. As discovery has been stayed in the underlying the Civil Action, it is undetermined at present whether The Neely Group caused HNO to be liable for any payments due and owing to Ricchetti, Inc.

28. With the assistance of The Neely Group's bankruptcy petition, additional facts point to fraudulent behavior by The Neely Group, through its principal Steve Neely.

29. Steve Neely's social media posts claim no experience or expertise in introducing The Neely Group's clients to government officials at any level. A copy of a recent About.me, blog

---

[1] Neely presented himself for marketing purposes as the Chief Operating Officer of HNO at Steve Neely's request.

post, and business entity search of the Illinois Secretary of State website (The Neely Group doing business as The UPS Stores #3173 and #5744) are attached hereto as group **Exhibit G**.

30. The Neely Group runs UPS franchises and has no businesses involving the introduction of clients to politicians at any level. *See, 24-bk-03859,* Doc. 8 at ¶4; Doc. 77, at ¶25.

31. And despite doing no discernable direct work on Plaintiffs' behalf, which led to termination of the Contract, The Neely Group wrongfully retained the $1,425,000 paid to it by Plaintiffs.

32. Less than one year later, The Neely Group's finances began to unravel:

a. On October 19, 2022, The Neely Group receives and SBA loan though Old National Bank for $1,542.600.00, encumbering all of its current and future assets. The loan payment is $18,078.30 per month. *See, 24-bk-03859,* Doc. 64, Exhibit A, p. 14 of 35; Exhibit B, p. 18 of 35.

b. On June 07, 2023, The Neely Group takes out a loan with IOU Financial and defaults on its $138,565.81 obligation which collection agency Triton Recovery Group pursues beginning on November 27, 2023. *See,* Doc. 24-4.

c. From June 2023 through February 2024, The Neely Group bounces EFT payments to its UPS franchisor. *See*, Doc. 33 at ¶15, and Doc. 33-11.

d. The timing of the monies paid by Plaintiffs to The Neely Group and The Neely Group's true business of running UPS franchises, give rise to a reasonable inference that said monies were used to proverbially "rob Peter to pay Paul" in a failed attempt to prop up its failing UPS franchises. Upon information and belief, the discovery of The Neely Group's financial records will objectively confirm this key fact both in the underlying matter before Judge Durkin and in this Court.

7

**CLAIM ONE**
**False Representations and Actual Fraud—11 U.S.C. §523(a)(2)(A)**

33.     Plaintiffs incorporate paragraphs 1-32 as and for Paragraph 33 as if fully set forth herein.

34.     Pursuant to 11 U.S.C. §523(a)(2)(A), the court will hold that a debt is not dischargeable when it is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's … financial condition."

35.     The Neely Group, through its principal Steve Neely, made false statements and failed to disclose material facts as to the true nature of its business dealings. Specifically, that it had no experience in introducing its clients to the Washington-based politicians which was the essence of the subject contract.

36.     Upon information and belief, at the time the aforementioned representations and/or material omissions were made, The Neely Group knew its representations and omissions were false, untrue, misleading, and as a direct and proximate cause of these intentional misrepresentations and omissions, The Neely Group knew that Plaintiff, through its principal Owens would rely on said misrepresentations and tender $1,425,000 in cash to The Neely Group.

37.     Upon information and belief, The Neely Group intended to induce Plaintiff to act or refrain from acting upon The Neely Group's misrepresentations and/or material omissions and Plaintiff justifiably relied upon such false representations and omissions.

38.     Plaintiff suffered damages as a direct and proximate consequence of the misrepresentations and omissions made by The Neely Group.

39.     As a result of the alleged misrepresentations and fraud by The Neely Group, The Neely Group received a total of $1,425,000 which would not have been paid by Plaintiff if the misrepresentations had not been made, or if material facts, such as actually being in the business

of operating UPS franchises, had not been materially omitted. In short, The Neely Group's conduct constitutes actual fraud.

40. The Neely Group's obligation is money obtained by false pretenses, false representations, or actual fraud, and is non-dischargeable.

41. There is an actual controversy between Plaintiff on the one hand, and The Neely Group on the other, which is within the jurisdiction of the United States Bankruptcy Court, and the Court may declare the rights and other legal relations of the parties to this action and enter relief based on its power to issue declaratory judgment.

42. Accordingly, Plaintiff is entitled to a Judgment Order from this Court declaring, pursuant to 11 U.S.C. §523(a)(2)(A), that The Neely Group's debt to Plaintiff of $1,425,000 is non-dischargeable.

## CLAIM TWO
### Willful and Malicious Conduct—11 U.S.C. §523(a)(6)

43. Plaintiffs incorporate paragraphs 1-32 as and for Paragraph 43 as if fully set forth herein.

44. Pursuant to Section 532(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful and malicious conduct which results in damage shall be nondischargeable.

45. Plaintiff believes and alleges that The Neely Group entered into the Contract with the specific intent not to use the $1,000,000 cash retainer, nor subsequently the additional $425,000 demanded by The Neely Group paid by Plaintiff, for the purpose of the Contract.

46. Indeed, by examining the facts and admissions made by The Neely Group in these proceedings, Plaintiff believes and alleges the aforementioned cash was used by The Neely Group to prop up its failing UPS franchises rather than introduce Black Carbon, HNO Owens to

9

Washington politicians in an effort to lobby for legislation to support Plaintiff's goal to combat climate change.

## CLAIM THREE
### Unjust Enrichment Against The Neely Group

47.Plaintiffs incorporate paragraphs 1-32 as and for Paragraph 47 as if fully set forth herein.

48.Plaintiff conferred a benefit upon The Neely Group by tendering a total of $1,425,000 in cash for the purpose of introducing Plaintiff to certain Washington politicians for the purpose of encouraging legislation in support of Plaintiff's goal to combat climate change.

49.Upon information and belief, The Neely Group benefited from this cash infusion into its failing UPS franchises without making restitution to Plaintiffs for using the cash for a purpose that Plaintiffs never intended for said cash to be used.

50.The retention and use of the $1,425,00 in cash by The Neely Group is unjust.

51.By reason of the foregoing, Plaintiff is entitled to return of its $1,425,000 which unjustly enriched The Neely Group.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff BLACK CARBON COALITON, INC. prays for entry of judgment against The Neely Group as follows:

A.For an order providing that the debt owed by The Neely Group to Black Carbon Coalition, Inc. is non-dischargeable in this or any other proceeding under Title 11 to which this cased may be converted, any in any future bankruptcy case filed by or against The Neely Group;

10

      B.      Judgment declaring that the entire debt owed by The Neely Group to Black Carbon Coalition, Inc. is nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(6);

      C.      Judgment against The Neely Group for unjust enrichment in the amount of $1,425,000 plus statutory interest accruing thereto; and

      D.      Such other and further relief this Court deems just and proper.

Dated:  June 24, 2024                                         Respectfully submitted,

**BLACK CARBON COALITION, INC.**

By: */s/ Dennis F. Esford*
One of Their Attorneys

**WINDY CITY TRIAL GROUP, INC.**
Dennis F. Esford, ARDC #6281760
3039 N. 27th Street
Phoenix, AZ 85016
P: 312-305-7725
E: denny@windycitytrialgroup.com

11