**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | ) | |
|---|---|---|
| In re: | ) | Case No. 24-03859 |
| The Neely Group, Inc., | ) | Chapter 11 |
|     Debtor. | ) | Hon. A. Benjamin Goldgar |
| | ) | |

**THE UPS STORE, INC.'S MOTION TO LIFT STAY TO SAFEGUARD**
**THE UPS STORE, INC. MARKS AND DE-BRAND DEBTOR LOCATIONS**

The UPS Store, Inc. ("TUPSS"), by and through its undersigned counsel, hereby files this motion for entry of an order lifting the automatic stay for the limited purpose of allowing TUPPS to engage with the Debtor to remove from customer view and safeguard all TUPSS Marks (as defined below) currently in the Debtor's use and possession, including, but not limited to taking all necessary actions to safeguard or cover branded TUPSS signage displayed by the Debtor (the "Motion").  In support of this Motion, TUPPS respectfully states as follows:

**JURISDICTION AND VENUE**

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory and legal predicates for the relief sought herein are section 362 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rule of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules").

1

## PROCEDURAL & FACTUAL BACKGROUND

3. This Court is aware of the factual history between TUPSS, the former franchisor of the Debtor, and the Debtor via the full briefing of *The Debtor's Motion to Enforce Automatic Stay and to Sanction the UPS Store, Inc.* [Docket No. 24] (the "Debtor's Stay Motion") and accordingly, they will not be re-stated in the Motion.

4. This Court ultimately denied Debtor's Stay Motion and ruled that the Franchise Agreements (as defined in the Debtor's Stay Motion and TUPSS' responsive pleadings thereto) were properly terminated prior to the petition date. [Docket No. 89 & 90].

5. Pursuant to section 14.1(a) of the Franchise Agreements, immediately upon termination, a former franchisee must, among other things:

> Cease to operate the former Center at Franchisee's Location, cease to use the System and Marks in any form, cease to hold itself out as a Franchisee of TUPSS, and not use or identify in any business name any of the words "The UPS Store," or "UPS," or "Store," or "Mail" or "Boxes" or "Etc." or the combined letters "TUPSS" in any combination, form or fashion or any words or letters confusingly similar to any of the words listed above, including, but not limited to, "Mail Boxes," "Mailboxes" or "MailBoxes."  Franchisee shall take such action as TUPSS may require to accomplish the foregoing.

6. "Marks" shall be defined in the Motion exactly as it is in the Franchise Agreements as:

> [T]hose certain trademarks, service marks, trade names, trade dress, interior and exterior design, logos and/or indicia of origin (identified in Item 13 of TUPSS' then-current The UPS Store Franchise Disclosure Document and/or in the Manuals) and such other trademarks, service marks, tradenames, slogans, trade dress, interior and exterior design, logos and/or indicia of origin as TUPSS may authorize Franchisee to use from time to time.

7. Section 14.4 of the Franchise Agreements clarifies that "In no event shall a termination and/or expiration of this Agreement affect Franchisee's obligations to take or abstain from taking any action in accordance with this Agreement."

8. During the time period between the Debtor's initial *pro se* petition filing and filing of the Debtor's petition by counsel, TUPSS sought to collect the franchisor branded materials from the store locations following the Franchise Agreement terminations. The Debtor refused to turn over all of the Marks and, most importantly, the "The UPS Store" trademarked logos and facade-mounted exterior signs (together the "Exterior Signs") remain at both of the Debtor's locations. To TUPSS knowledge, no efforts have been made to cover these signs, including following this Court's ruling that the Franchise Agreements were properly terminated prior to the petition date.

9. On information and belief, the Marks, including the Exterior Signs, continue to be displayed by the Debtor at the Debtor's locations, with no clear indication or clarification to patrons that, despite the presence of the Marks and Exterior Signs, the Debtor's locations are not licensed TUPSS franchises.

10. As this Court is aware, following the petition date, for weeks the Debtor continued to accept and hold packages from customers that bore pre-printed UPS labels ("UPS Packages"), despite the Debtor's knowledge that United Parcel Service, Inc. ("UPS") was no longer making collections at the Debtor's locations as a result of the termination of the Franchise Agreements.

11. Upon learning of the Debtor's behavior related to the UPS Packages, TUPSS filed the *The UPS Store, Inc.'s Emergency Motion to Lift Stay to Take Custody and Process Customer Packages and Cover Branded Signage* [Docket No. 46] ("TUPSS' Emergency Stay Motion"). TUPSS subsequently withdrew its Emergency Stay Motion before it was heard by this Court. The motion was withdrawn in accordance with a settlement reached between TUPSS and the Debtor that resulted in TUPSS negotiating with UPS to make pick-ups at the Debtor's locations until such time as the Court ruled on the Debtor's Stay Motion with the understanding that the Debtor would conspicuously post signs clarifying that is unable to scan and process UPS Packages and does not

3

have regularly scheduled UPS pick-ups (the "Clarifying Signs"). On information and belief, the Debtor the Clarifying Signs are not posted in the Debtor's locations (or at least not in any place prominent enough to be noticed).

12. Knowing the time it may take for a ruling on the Debtor's Stay Motion, the decision by TUPSS and UPS to make pick-ups at the Debtor's locations despite the termination of the Franchise Agreements was motivated by a desire to protect the TUPSS and UPS brands, as well as ensure that customers who dropped off UPS Packages would not be penalized for any lack of clarity that may exist due to the Debtor's continued acceptance of packages in a location that still displayed TUPSS Marks, including the Exterior Signs.

13. Counsel to the Debtor and TUPSS have discussed the potential for a sale of the Debtor's assets to a buyer acceptable to TUPSS and to whom TUPSS would issue a new Franchise Agreement (provided the purchaser meets all required TUPSS' qualifications) and TUPSS has even provided potentially interested purchaser candidates to the Debtor.

14. Once the Court denied the Debtor's Stay Motion and ruled that the Franchise Agreements were terminated pre-petition, the Debtor continued to display the Marks and the Exterior Signs. Counsel to TUPSS has requested that the signs be obscured, though the Debtor has not yet done so.

15. On information and belief, despite the Court's ruling, the Debtor inexplicably continues to accept and hold UPS Packages. UPS has informed TUPSS that it will not continue pick-ups indefinitely at these former franchise locations and, as it appears the Debtor will not comply with its obligation under Section 14 of the Franchise Agreements, TUPSS is filing this motion to compel the Debtor to do so, including cover (or allow TUPSS to cover) the Exterior Signs.

4

**RELIEF REQUESTED**

16. By this Motion, TUPSS seeks entry of an order by this Court lifting the automatic stay in order to allow TUPSS to work with the Debtor to remove from customer view and safeguard all branded Marks and cover the Exterior Signs.

17. TUPSS respectfully requests that any relief granted by this Court pursuant to this Motion to take effect immediately notwithstanding Bankruptcy Rule 4001(a)(3).

**BASIS FOR RELIEF REQUESTED**

**A.    TUPSS is Entitled to Relief from the Automatic Stay Under Section 362(d)(1).**

18. Section 362(d) of the Bankruptcy Code provides, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay … (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; …." 11 U.S.C. § 362(d). "[T]he Bankruptcy Code does not define 'cause,' leaving courts to consider whether cause exists on a case-by-case basis." *In re Posner*, 610 B.R. 586, 590 (Bankr. N.D. Ill. 2019); *see also In re Northbelt, LLC*, 630 B.R. 228, 284 (Bankr. S.D. Tex. 2020); *see also In re Mendoza*, 111 F.3d 1264 (5th Cir.1997) ("What constitutes 'cause' for the lifting of the stay pursuant to Section 362(d)(1) is not defined in the Bankruptcy Code. Whether cause exists must be determined on a case-by-case basis based on an examination of the totality of circumstances."); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) ("'for cause,' a term not defined in [11 U.S.C. § 362(d)] so as to afford flexibility to the bankruptcy courts."); *In re JCP Properties, Ltd.*, 540 B.R. 596, 613 (Bankr. S.D. Tex. 2015) ("[courts] determine whether cause exists in a case-by-case approach."); *In re WGMJR, Inc.*, 435 B.R. 423, 432 (Bankr. S.D. Tex. 2010) (quoting *In re Reitnauer*, 152 F.3d 341, 343 n. 4 (5th Cir.1998)).

19. In the case *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991), the Seventh Circuit developed a balancing test to determine if cause exists; however, the

"*Fernstrom* Factors" are applied where the relief sought is the lifting of the stay to allow litigation to continue. *Id.* As the instant relief is entry to the Debtor's store locations to work with the Debtor to remove from customer view and safeguard the Marks and cover the Exterior Signs, *Fernstrom*'s requested relief is not applicable. Nonetheless, examination of the factors under the current situation is instructive as it is clear that if they were applied, the *Fernstrom* factors would favor stay relief. Other courts have similarly applied the *Fernstrom* factors to a stay relief analysis when the requested action was not continuation of a civil suit. *See In re Posner*, 610 B.R. at 593.

20. The *Fernstrom* factors are whether: (a) any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit, (b) the hardship to the non-debtor party by maintenance of the stay considerably outweighs the hardship to the debtor, and (c) the creditor has a probability of prevailing on the merits. *See In re Fernstrom*, 938 F.2d 735. First, the Debtor nor the estate will not suffer any great prejudice, in fact allowing TUPSS to cover the branded signage will only deliver benefits to the estate. Each day that the Debtor displays the Marks (and Exterior Signs), the Debtor is violating Section 14 of the Franchise Agreements, and TUPSS retains all rights to seek a damages claim in the bankruptcy, including (if so found) such claim on an administrative basis, and TUPSS retains all rights to pursue this claim under the guaranty of the Debtor's liabilities provided by the Debtor's owner, Mr. Neely. Covering The UPS Store signage at Debtor's store locations will only mitigate the damages of the estate for their wrongful operation in The UPS Store's name, wrongful acceptance and possession of customer packages and potential fraud. Further, the Debtor's behavior may be sufficient to give rise to administrative claims by customers under Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 thru 505/12). Second, the longer TUPSS is stayed from covering the relevant signage, the greater the reputational risk to TUPSS and the TUPSS franchisees and

the continued hardship to the customer shippers who have delivered UPS Packages to the Debtor's store believing they are fully functioning and operating The UPS Store franchises. Third, "prevailing on the merits" is not applicable to the current situation.

21. TUPSS believes that covering the signs can avoid the issue of customers mistaking the Debtor's locations as licensed TUPSS franchise locations and mitigate risk that they will attempt to leave packages at those locations. This will protect the public, customers, the brand, and other franchisees who have invested in The UPS Store brand and are properly operating under the TUPSS System as licensed franchisees. Moreover, the Debtor's locations are, as clarified by this Court, not licensed franchise locations and therefore, should not be afforded extra-contractual rights to hold themselves out as authorized TUPSS locations solely because the Debtor is in bankruptcy.

22. The potential harm of allowing the signs and logos to remain in place through the entire pendency of the bankruptcy case far outweighs any perceived benefit to the Debtor or the estate. These right to display and trade off of the goodwill of the Marks and Exterior Signs are not property of the Debtor's estate and there is no harm or prejudice to the Debtor by the Court granting TUPSS' request to coordinate with the Debtor to enter the Debtor's store locations, during business hours, without disturbing the peace, and safeguard and/or cover all branded signs and logos.

23. In light of the Debtor's raising the potential of a sale, TUPSS is seeking to accomplish this goal in the least harmful way possible to the estate. TUPSS is not seeking to remove all materials branded with the Marks from the Debtor's possession, is not seeking to have the Debtor be ordered to destroy the Marks and branded materials, and is not seeking to have the Exterior Signs detached from the Debtor's facades (merely to have the covered). Should a sale go

forward, the Debtor will remain in possession of these assets. However, until such time, the Debtor should not display any of the Marks and the Exterior Signs should remain covered.

24. Further, the relief requested by this Motion is equitable relief sought to avoid the potential for the continuation of any customers "leaving" packages at these locations under the false understanding that it is a fully functional and sanctioned TUPSS location without the opportunity for these locations staff to inform customers that the locations are not in fact functional or active TUPSS locations. The UPS Store signage causes confusion that these locations have all the capabilities of a standard The UPS Store location and can be treated as an official UPS Drop-Off location – which is not the case and coverage of the sign can remedy this issue (such that the Debtor need not be solely responsible for informing customers of the locations' legal status vis-à-vis TUPSS). Once the relief sought by this Motion is granted, a customer may still leave UPS Packages with the Debtor; however, the customer will be aware that it does so at its own risk and it will be clear to all that any liability for failure to deliver the packages will rest solely with the Debtor.

25. The nature of the harm the Debtor is causing is dispersed amongst numerous customers and third parties, therefore, TUPSS is filing this Motion and seeking to lift the stay to mitigate the harm the Debtor is causing to TUPSS and the many customers who thought they were visiting a licensed TUPSS franchise location, as well as the TUPSS franchisees that are also harmed by an customer's substandard service experience at the Debtor's locations.

**B.     TUPPS is Entitled to Relief from the Automatic Stay Under Section 362(d)(2).**

26. Section 362(d)(2) further provides a party-in-interest relief from the automatic stay "with respect to a stay of an act against property . . . , if— the debtor does not have an equity in such property; and "such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). Because § 362(d)(2) is drafted in the conjunctive, both prongs must be satisfied to grant

8

relief from the stay. *In re New Era Co.*, 125 B.R. 725, 728 (S.D.N.Y.1991). TUPSS bears the burden of proof on the issue of equity, but Debtor bears the burden of proof on whether the branded signage is necessary for an effective reorganization. *See* 11 U.S.C. § 362(g); *In re New Era Co.*, 125 B.R. at 728. The term "equity" pertains to the 'difference between the property value and the total amount of liens against it.'" *In re New Era Co.*, 125 B.R. at 728 (quoting *In re 6200 Ridge, Inc.*, 69 B.R. 837, 842 (Bankr.E.D.Pa.1987)).

27. Debtor has no ownership interest, whether legal or equitable, in the Franchise Agreements or the branded signage at the store locations. Debtor has no authority to continue holding itself out as a franchisee and operating under The UPS Store brand. The fact that Debtor has *no* interest in the Franchise Agreements and branded signage is sufficient in and of itself to lift the automatic stay pursuant to section 362(d)(2).

28. While the Court need not reach this issue in order to grant TUPSS the relief it seeks, Debtor is also unable meet its burden of proof in demonstrating the indispensability of the Franchise Agreements and branded signage to a successful reorganization. "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is *essential* for an effective reorganization that is in prospect." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–76 (1988) (emphasis added).

29. Even if Debtor is capable of confirming a plan, the Franchise Agreements and associated signage would confer no benefits towards the achievement of a successful reorganization. As noted above, the Franchise Agreements were deemed properly terminated prior to the petition date and Debtor has no continuing interest or right in the TUPSS franchise.

Accordingly, a successful reorganization, if any, would not include the Franchise Agreements or associated branded signage.

30. In light of the foregoing, there is no reason to delay the inevitable. TUPSS should be granted relief from the automatic stay pursuant to Section 362(d)(2).

## WAIVER OF STAY IN BANKRUPTCY RULE 4001(a)(3)

31. Bankruptcy Rule 4001(a)(3) states that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise*." Fed. R. Bankr. P. 4001(a)(3) (emphasis added).

32. TUPSS respectfully requests that the fourteen (14) day stay in Bankruptcy Rule 4001(a)(3) be waived so TUPSS may promptly cover branded signage and continue its efforts to mitigate its damages (thereby reducing its claim against Debtor's estate). TUPSS asserts that waiver is necessary because the harm suffered to TUPPS, other franchisees, UPS, Inc., and the customers grows larger each day Debtor continues to operate holding itself out as a franchised The UPS Store.

## CONCLUSION

The Debtor, as a former TUPSS franchisee, does not maintain any interests in the Franchise Agreements, and as such does not maintain any interests in the TUPSS trademarks, signs, or logos. Consequently, the Debtor and the estate are not harmed by the removal and/or coverage of such signs. In contrast, allowing Debtor to continue holding itself out as an active franchisee is harmful to all parties involved, including the Debtor, TUPSS, other franchisees, UPS Inc., and the customer shippers and intended package recipients. On information and belief, customers continue to enter the Debtor's stores under the belief that the stores are operating as part of the TUPSS System, with

all the capabilities and services of a franchise location. A grant of this Motion will mitigate the harm and damages against the Debtor's estate.

**WHEREFORE**, TUPSS respectfully requests that this Court enter an order (a) granting this Motion, (b) lifting the automatic stay for the purpose of allowing TUPSS to enter the Debtor's premises to collaborate with the Debtor to remove from customer view and safeguard all Marks, including any trademarked The UPS Store signage at the Debtor's store locations, (c) authorizing TUPSS to engage with the Debtor's landlords to coordinate coverage of the Exterior Signs, (d) directing the Debtor to conspicuously post signs clarifying that despite the presence of any residual TUPSS branding inside the store, these locations are not authorized TUPSS franchises, (e) prohibiting Debtor from representing to Customers that UPS packages left at the store locations will be picked by up at that location by UPS, (f) directing the Debtor to coordinate with TUPSS to effectuate the foregoing, and (f) ordering such other and further relief as is just and proper.

Dated:   July 9, 2024　　　　　　　　　　　　THE UPS STORE, INC.

　　　　　　　　　　　　　　　　　　　　　　By: */s/ Michael T. Gustafson*
　　　　　　　　　　　　　　　　　　　　　　Michael T. Gustafson
　　　　　　　　　　　　　　　　　　　　　　FAEGRE DRINKER BIDDLE & REATH LLP
　　　　　　　　　　　　　　　　　　　　　　320 South Canal Street, Suite 3300
　　　　　　　　　　　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　　　　　　　　　　　Telephone: (312) 569-1000
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 556-3000
　　　　　　　　　　　　　　　　　　　　　　Emails: mike.gustafson@faegredrinker.com

　　　　　　　　　　　　　　　　　　　　　　*Counsel to The UPS Store, Inc.*